We'll hear the next case in the calendar, McIntosh v. City of New York. Good morning, Your Honors. I just want to be clear about something. You have not sought rebuttal time. I'm seeking two minutes of rebuttal time, Your Honor. Two minutes, so that would mean eight and two. Yes, Your Honor. Thank you very much. You may proceed. Thank you, Your Honor. May it please the Court, this case boils down to the arbitrary arrest that was made back in August of 2013 by officers to my client who was being assaulted by a much larger boyfriend, and his credibility is entirely vitiated to probable cause. The only cause that, or the only facts that the officers have to go on, based on viewing the light most favorable to my client, is that she had her boyfriend who was assaulting her had bite marks and scratch marks on him. And he had previously made a 9-1-1 call. Yes, Your Honor. He did make a 9-1-1 call, but that was after my client's informing him. That's what brought the officers to the residence, right? Yes, Your Honor. That is true. But that was vitiated in light of all of the facts that he alleged at the scene, in saying that my client was drunk, which is not considerable under the Curley v. Village of Suffering case, I believe it was a Second Circuit case in 2000. And the only things that the officers had to go on were the bite marks and the scratch marks on her chest. The officers, it's really unrefuted that the officers, when arriving to the scene, saw, would have seen, peeled my client's boyfriend off of her as he was slamming her onto the ground and trying to get her to quiet down. And they witnessed an assault. In light of that, they decided to side with the boyfriend anyway. He said that he did not have any weapons at the scene. He said that she did not live there. Officer Taylor, who was the main officer involved in the investigation and the search, he even admitted that he believed that my client lived at the premises. She had keys to the premises. Her son's bed was in the apartment. And he said he didn't have any weapons. There were weapons in plain view. There was a scoped rifle against— When was he arrested? He was arrested afterwards, Your Honor, yes. After my client. You mean, but during this visit by the police, not days after? Correct. During this visit by the police. After my client was taken away in the ambulance. He said that he did not attack my client. Meanwhile, my client had a 12-inch— What was he charged with? He was charged with, I believe, domestic violence. I don't know the exact charge, Your Honor. I'm not going to pretend I know at this moment to this court, but I defer the record. He was charged for assaulting my client. My client was charged with assaulting him. And that was—the issue is whether the police had probable cause to arrest my client. There were plenty of facts that officiate his probable cause, such as in the ambulance report, there was a 10- to 12-inch note of laceration to her right leg. My client told the officers that Mr. Vecchio had stabbed her, assaulted her with the scissors, and she identified the scissors at the scene. She said they were his. In light of this, Officer Taylor, in his submissions to the complaint, the arrest complaint, he noted that there were no weapons found at the scene, despite these weapons being in plain view, the ammunition being on the dresser. He said he searched the closet. He admitted he did a room-by-room search with Sergeant Chen, and he didn't see any weapons. Meanwhile, there was a scope rifle against the window. There were three pistols in the closet. There were shotguns under the couch. The whole thing is that these facts, my client conveyed to them that she was in fear of her life. In these situations, we have law that says that the veracity of citizen complaints who are victims of the very crime they report to the police, we assume that there may be something to them, right? And it's not the role of author citizens to sit as prosecutor, judge, or jury. Sorry, Your Honor. Correct. That is correct, Your Honor. That is the state of the law, but the decisions also support that when the circumstances arise that undermine the complaining witness's credibility, that probable cause is vitiated. And that under certain circumstances, this is one of those circumstances. And I'd like to address, Your Honor, the implications of what this decision might have over a much larger basis. This would implicate a situation where if any time a spouse and the victim of domestic violence who defends herself against an assailant, a spouse, a boyfriend, whatever the case may be, a common law partner, defends against an assailant and leaves marks on that assailant. The assailant says that the spouse battered them first, whatever the case may be, and that complaining witness, the spouse, is totally not credible based on the facts, based on officers' observations that rebut the allegations of the complaining witness, that this would basically subject any spouse and deter them from complaining of domestic violence because they can be arrested as well. And we need to protect those people. We need to protect them from arbitrary arrests. And it's the officer's, I submit to the court that it's the officer's job to, at least whenever there's situations where the complaining witness's credibility is totally undermined, that it's imperative to not deter victims of domestic violence to come forward. How can the credibility be totally undermined when you have each side making statements that have some degree of credibility, either because of physical marks on the person, or because the person has made a 911 call to ask for assistance? Well, Your Honor, that is exactly the issue in this situation. In most situations, it would be the officer's job to, you know, the probable cause would stand if there was nothing- Probable cause. Right. It's not absolute. It doesn't require absolute certainty. That's correct, Your Honor. But when that's fictiated by the totality of circumstances that totally undermine the complaining witness's story and version of events, then that has to be- It sounds as if your view of the totality of the circumstances eliminates some of the circumstances. Well, if I understand Your Honor correctly, it eliminates the, basically undermines the complaining witness's version of events that my client attacked him first. I remind the court that he is much larger. He's about 50% larger than her in weight, if I remember correctly. They witnessed him slamming her on the ground. The officers at their affidavits, if it's in a feigned affidavit, that he didn't. They testified totally differently at their depositions. That's a feigned affidavit. Basically, there's nobody to rebut my client's version of events that when the officers arrived, that Mr. Vecchio was slamming her on the ground. And I see that I'm running out of time. On the medical indifference point, your client was in police custody for about 36 hours. Yes, Your Honor. During which time her leg wound was treated in an ambulance. And she was twice taken to the hospital, right, for treatment. So where is the indifference? There may be disagreement about what kind of treatment was called for, but that doesn't rise to a constitutional claim, does it? With due respect, Your Honor, the fact that they took her without the physicians discharging her, and she had shortness of breath, and she had multiple complaints due to the assault upon her. The officers decided, they actually lied to my client and said that the judge needs to see you in the morning. If you don't come now, you're going to be here for significantly longer. And they took her, they deprived her. They sent her booking actually twice on two different occasions. Central booking told the officers from the precinct, come back and get her, she needs medical attention. And the first time she wasn't able to be processed and properly booked, after the officers took her to the precinct, they brought her back to booking again. And again, that's when they finally took her the second time. So the deprivation of medical, deliberate deprivation of medical needs, was mostly in that first visit when they deprived her of medical care and being properly discharged.  Thank you, Your Honors. Good morning, Your Honors. I'm going to start right away with the probable cause analysis. The officers here clearly had probable cause to arrest McIntosh, because her boyfriend called 911, as Your Honor pointed out. On the scene, he reiterated his account, which is that while they were in the apartment, his inebriated girlfriend bit and attacked him. The officers saw the bite marks on his neck, which is not something you can do to yourself. They saw the wounds on her leg, too, didn't they? They did, and they arrested him. And they actually arrested him, to answer Your Honor's question, for assault in the second degree, which is a higher charge than the account that they arrested her for, which is assault in the third degree. So again, this is not a situation where they assessed the circumstances and simply arrested her without handling her accounts of assault. They did arrest him. They processed both people for assault in different degrees. And McIntosh makes much of the claim that there's not any evidence that she was drunk. The issue isn't whether she, in fact, was drunk. The issue was whether or not the officers, who both of them said that they believed she was inebriated, it confirmed, it gave a ring of truth to what Vecchio was saying, which is that she, in a drunken state, had attacked him. He also makes much of the fact that Mr. Vecchio is a larger person. We don't dispute that. But just because you're a larger person doesn't mean you're automatically a liar. It doesn't mean that you also cannot have been a victim in something that we all agree, to this day, there is no objective evidence what exactly happened in the apartment. So no amount of investigation, which is what McIntosh seems to be asking the officers to do, would have definitively determined what happened. And officers, as this Court knows, are not under responsibility to find out, to assess credibility and get to the bottom of the cross-complaints at the scene of the crime. He also talks about the larger implications. I don't think, if Your Honors were to affirm this case, there's going to be any larger implications, other than the fact that if this Court were to reverse, it would effectively force officers to engage in a more probing analysis, which would go against this Court's precedent. On the substantive due process claim, at least as I understand it, it's based upon McIntosh's belief that arresting defendants created false evidence against her, which they forwarded to prosecutors in the Queen's DA's office. And this was described as a claim for denial of the right to a fair trial based on fabrication of evidence. District Court dismissed this cause of action because it found that there was probable cause to arrest McIntosh. But don't we have case law that says that, for example, in a Section 1983 case, where there was a claim for the denial of a right to a fair trial based on an officer's provision of false information to prosecutors, that that can stand even if the officers had probable cause under Section 1983? Yes, Your Honor. Well, it's true that District Court had dismissed that claim on that basis. But as that claim was briefed here, the City acknowledged that probable cause disposed of the false arrest claim, the malicious prosecution claim, and the abusive process claim. So both sides analyzed the substantive due process claim as a denial of a fair trial claim. And in our brief, we explained many reasons why that claim still cannot survive summary judgment, putting aside the issue of probable cause. And if you want, I can walk through that, Your Honor. I understand that argument. Okay. But yes, it's true that District Court didn't go through that analysis. But this Court can still affirm on the fact that McIntosh cannot show how the officers deliberately fabricated evidence, that anything that they fabricated allegedly would have been likely even to influence a jury's verdict, particularly because I think the reply brief makes it very clear that what McIntosh is complaining about are statements on her domestic incidents report, which was used to support the charge against her then-boyfriend, Vecchio. So it doesn't even implicate her right to a fair trial. That's sort of an overall defect with the problem. And in the various statements, she either failed to show that Taylor actually knew that this was, in her words, fabricated or false, or she has failed to show that it would have been likely to influence a jury, even if we hypothetically got to that stage. If this Court has no further questions, we ask this Court to affirm. Thank you. You'll have two minutes. Thank you, Your Honor. I waive rebuttal unless Your Honors have any questions for me. Thank you, Your Honor. Thank you. Thank you both for your arguments. The Court will reserve decision.